# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

JULIAN BARTON HANEY, )
)
Plaintiff, )
)
v. ) Case No. CIV-11-412-JHP
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff Julian Barton Haney (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on July 1, 1964 and was 46 years old at the time of the ALJ's decision. Claimant completed his education through the eleventh grade. Claimant has worked in the past as a maintenance worker, handyman, carpenter, and produce manager. Claimant alleges an inability to work beginning March 16, 2009 due

3

to limitations resulting from irritable bowel syndrome, chronic constipation, acid reflux disease, chronic fatigue, headaches, chronic nausea, and depression.

**Procedural History**

On April 17, 2009, Claimant protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act and on April 29, 2009, Claimant filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*). Claimant's applications were denied initially and upon reconsideration. On July 6, 2010, an administrative hearing was held before ALJ Trace Baldwin in Poteau, Oklahoma. On October 1, 2010, the ALJ issued an unfavorable decision on Claimant's applications. The Appeals Council denied review of the ALJ's decision on September 22, 2011. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform a range of sedentary work

with some limitations.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in: (1) failing to consider all of Claimant's severe impairments; (2) failing to properly consider the opinion of Claimant's treating physician; (3) failing to properly assess Claimant's credibility; and (4) making an improper determination at step four of the sequential evaluation.

**Claimant's Impairments**

In his decision, the ALJ determined Claimant suffered from the severe impairments of chronic constipation, gastroesophageal reflux disease ("GERD"), and arthralgia. (Tr. 12). Claimant contends the ALJ should also have found he suffered from the additional severe impairments of inflammatory bowel disease, nausea, malaise, fatigue, and depression.

At step two, Claimant bears the burden of showing the existence of an impairment or combination of impairments which "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). An impairment which warrants disability benefits is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory

diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D). The severity determination for an alleged impairment is based on medical evidence alone and "does not include consideration of such factors as age, education, and work experience." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

The burden of showing a severe impairment is "de minimis," yet the presence of a medical condition alone is not sufficient at step two. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997); Soc. Sec. R. 85-28. A claimant must demonstrate he has a severe impairment that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D).

A claimant's testimony alone is insufficient to establish a severe impairment. The requirements clearly provide:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other

6

symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

42 U.S.C.A. § 423(d)(5)(A).

The functional limitations must be marked and severe that can be expected to result in death or to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(1)(C)(i); 20 C.F.R. § 416.927(a)(1).

Prior to the date of alleged disability, on March 25, 2005, Claimant was treated for abdominal pain and constipation. (Tr. 310). On July 7, 2005, Claimant again complained of constipation, abdominal pain, and reflux. (Tr. 262). On May 29, 2008, Claimant sought treatment from Dr. Zachariah Anderson. He diagnosed Claimant with constipation and GERD. (Tr. 286-87). On February 10, 2009, Claimant saw Joseph Bennett, P.A. Claimant reported experiencing fatigue, constipation, and weakness. (Tr. 276). Mr. Bennett diagnosed Claimant with malaise and fatigue. (Tr. 279). On March 16, 2009, Claimant was attended by Dr. Zachariah Anderson. Claimant complained of constipation and nausea and sought medication refills. (Tr. 274). Dr. Anderson diagnosed Claimant with GERD, constipation, and H. Pylori infection. (Tr. 275). On April 9, 2009, Claimant again saw Dr. Anderson and was diagnosed with constipation. (Tr. 273).

On June 5, 2009, Claimant was treated for H. Pylori infection,

GERD, constipation, and nausea. (Tr. 295). Claimant denied any depression or anxiety history but felt he was "starting to get depressed." (Tr. 294). On May 15, 2009, Claimant was diagnosed with GERD. (Tr. 297). He was found to have appropriate judgment and insight as well as appropriate mood and affect. (Tr. 295). On August 6, 2009, Claimant was treated for constipation, abdominal pain, nausea, headache, and dizziness. Claimant did not report depression. (Tr. 431-39). On April 22, 2009, Claimant was evaluated and found to have normal mood and affect, memory, and was properly oriented. (Tr. 441). On April 29, 2010, Claimant was treated by Dr. Mark Rogow for H. Pylori infection, GERD, malaise, fatigue, and nausea. (Tr. 446). On June 1, 2010, Dr. Rogow again attended Claimant and diagnosed him with GERD, constipation, arthralgia, malaise, and fatigue. (Tr. 445). On November 3, 2010, Julie Finney, P.A. diagnosed Claimant with GERD, constipation, and arthralgia. (Tr. 448).

Claimant testified of being nauseous with a "terrible pain in my colon." He stated he could hardly get out of bed and that the pain never ends. He takes laxatives that make him sick. (Tr. 36). He states he suffers from a sharp pain that will not go away for hours. Claimant experiences headaches. He relates that he has three or four good days in a month. (Tr. 37). He is sick but can move around. He experiences weight loss and eats a meal a day - largely consisting of liquids. (Tr. 38). He drove to the hearing

8

for about 35 minutes but does not normally drive long distances. (Tr. 39). Claimant states he is fatigued "all the time." He has problems concentrating. (Tr. 40).

During the typical day, Claimant gets up around noon and lays around and watches television. He goes out on the porch in the sun and sleeps for a while. (Tr. 41). He walks a half a block to his mother's house or his daughter's house. Others do his yard work. He has trouble sleeping. (Tr. 42).

Claimant states he has been depressed for "three or four years" because he can't take care of his family. (Tr. 44). He feels fatigued. (Tr. 45). He did not attend counseling for his alleged depression. (Tr. 46). He takes medication but can't remember the name. (Tr. 46-47). His problem stems from his colon. (Tr. 48).

The ALJ determined Claimant's malaise, fatigue, headaches, discolored urine, and depression were non-severe. (Tr. 13). He evaluated Claimant in the four broad functional areas in assessing mental disorders. He found minimal or no more than "mild" limitations in activities of daily living, social functioning, concentration, persistence or pace, and episodes of decompensation. (Tr. 13-14). The ALJ concluded Claimant experienced no work related limitations as a result of malaise, fatigue, headaches, discolored urine, or depression. (Tr. 14).

9

Claimant's complaints and diagnosis for malaise and fatigue are simply too inconsistent and of insufficient duration to constitute severe impairments. Similarly, Claimant has not been consistently diagnosed with inflammatory bowel disease or demonstrated significant work-related limitations from the condition. His nausea, though occurring, is not consistent as it appears to be related to his use of laxatives. With regard to Claimant's depression, the diagnosis of this condition has been erratic and inconsistent. The ALJ's evaluation of the broad functional areas was accurate and supported by substantial evidence. As a result, this Court finds no error in the ALJ's declining to find these conditions as severe impairments.

### Treating Physician's Opinion

Claimant also asserts the ALJ should not have disregarded the assessment of his functional limitations by Dr. Rogow, his treating physician. On July 1, 2010, Dr. Rogow completed a form entitled "Patient Evaluation and Work Capacity Form." Dr. Rogow found Claimant could stand/walk 0-2 hours in an 8 hour workday, sit for 3-4 hours in the same period, occasionally lift/carry a maximum of 20 pounds, could use his hands for repetitive simple grasping, pushing and pulling, and fine manipulation. Dr. Rogow estimated Claimant could not use his feet for operating foot controls which he found "aggravates abdominal pains." He can occasionally bend and climb but never squat or kneel. He is not restricted by

10

environmental factors and his treatment does not affect his ability to work. Dr. Rogow stated it is unknown when Claimant could be released for work. (Tr. 451). Claimant would be required to take frequent rests or breaks. His work restrictions have been in place since March of 2009. According to Dr. Rogow, Claimant is not capable of enduring a 4 to 6 hour workday at any level on a consistent basis due to his physical limitations. (Tr. 452).

The ALJ concluded that Dr. Rogow's opinion was due "little weight" as it was not supported by the medical evidence. (Tr. 18). He cited to Dr. Rogow's treatment notes wherein it was noted Claimant's abdomen was non-distended with mild tenderness and Claimant was experiencing a bowel movement every 3 days. (Tr. 19). On the other hand, he did afford the opinions of Dr. Anderson "great weight as a treating physician." (Tr. 19).

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

Essentially, the ALJ afforded one treating physician's opinion over that of Dr. Rogow. The objective medical record did not support the level of limitation attributed by Dr. Rogow in his assessment form. No error is found in the ALJ's evaluation of Dr. Rogow's opinion or the weight given to the opinion.

### Credibility Evaluation

The ALJ determined Claimant was not entirely credible. (Tr. 17). He found Claimant testified he quit work because his physician wrote something stating he could not work anymore when Dr. Anderson stated Claimant had to quit working. (Tr. 16). The ALJ also found Dr. Anderson's notes indicated Claimant was not in a lot of pain but is nauseous after being constipated. Dr. Anderson returned Claimant to work without restrictions on April 17, 2009. (Tr. 16). The ALJ also found Claimant was exaggerating the number of doctors he had seen, which Claimant estimated at between 50-100. (Tr. 17). The ALJ also found Claimant's assertions of disabling pain were not objectively borne out by extensive weight loss. (Tr. 20).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

13

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391. However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

The ALJ satisfactorily tied his conclusions on credibility to the medical record. This Court finds no error in his analysis.

**Step Four Analysis and RFC Evaluation**

In his decision, the ALJ determined Claimant retained the RFC to lift and/or carry at least 10 pounds occasionally and at least 10 pounds frequently, stand and/or walk for at least 2 hours in an 8 hour workday, and sit for at least 6 hours in an 8 hour workday. The ALJ imposed the additional restriction of requiring Claimant to use a hand held device for ambulation. (Tr. 15). After consultation with a vocational expert, the ALJ determined Claimant could not perform his past relevant work but could perform the sedentary representative jobs of order clerk, optical goods assembler, and cutter and paster. (Tr. 21).

Claimant reargues his credibility and the medical findings already discussed in this opinion. He also states that the jobs identified by the vocational expert require an educational level in excess of Claimant's abilities. Claimant's past relevant work, however, belies any claims of a reduced mental capacity. Claimant previously worked as a maintenance repairer and carpenter which are a skilled positions - by Claimant's own admission, the positions required technical skills, writing and supervising others. (Tr. 173-74). The medical record does not support further restrictions on Claimant's mental functioning.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 6th day of March, 2013.

*[signature]*
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE